UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WM CAPITAL PARTNERS, INC., <br><br> Plaintiff, <br><br> v. <br><br> JPMORGAN CHASE BANK, N.A., <br><br> Defendant. <br><br> JPMORGAN CHASE BANK, N.A., <br><br> Third-Party Plaintiff, <br><br> v. <br><br> PROVEST REALTY SERVICES, INC., <br> JAMES W. REED, individually and as <br> Trustee of PROVEST REALTY <br> SERVICES GRANTOR IRREVOCABLE <br> TRUST, and CLAUDIA CASCONE, <br><br> Third-Party Defendants. | Case No. 14 C 6443 <br><br> Magistrate Judge Sidney I. Schenkier |

## MEMORANDUM OPINION AND ORDER[1]

Edgebrook Bank ("Edgebrook") filed this action against defendant JPMorgan Chase Bank, N.A. ("Chase") on July 17, 2014, alleging that Chase was liable for negligence and conversion for improperly accepting and depositing a check which Edgebrook, a joint payee, did not endorse (doc. # 148: Order on Sum. J. at 1). On May 13, 2015, the Federal Deposit Insurance Corporation ("FDIC") was appointed receiver for Edgebrook, the original plaintiff in this case (doc. # 63), and on May 27, 2015, the FDIC was substituted as plaintiff (doc. # 73). On September 14, 2015, WM Capital Partners filed a motion to substitute as plaintiff for the FDIC,

---

[1] On October 21, 2016, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to this Court for all proceedings, including entry of final judgment (doc. # 166).

stating that on August 27, 2015, the FDIC sold Edgebrook's remaining loans to WM Capital Partners, including the loans at issue in this case (doc. # 97). In support of the motion, WM Capital Partners submitted – among other things -- a copy of the August 27, 2015 Assignment and Assumption of Interests and Obligations between the FDIC and WM Capital Partners ("Assignment") (*Id.*, Ex. 3). On September 16, 2015, the Court granted WM Capital Partners' motion to substitute as the plaintiff (doc. # 100). Chase did not file any objections to WM Capital Partners' motion.

WM Capital Partners has now filed a motion to substitute WM Capital Management, Inc., as plaintiff on the ground that WM Capital Partners was mistakenly named because the Assignment states that it was made to WM Capital Management and not WM Capital Partners (doc. # 213). Chase opposes the motion to substitute, now arguing that the Assignment did not transfer the rights in this lawsuit to either WM Capital Partners or WM Capital Management. Chase argues that in the Assignment, the FDIC "only assigned assets that consist of tangible personal property," which by definition does not include the right to assert a tort claim such as the conversion claim alleged in this case (doc. # 231: Chase's Opp'n to Pl.'s Mot. to Substitute at 2).[2]

Federal Rule of Civil Procedure 17(a) requires that "an action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a). "The 'real party in interest' is the person who possesses the right or interest to be enforced through litigation, and the purpose of this procedural rule is to protect the defendant against a subsequent action by the party actually

---

[2]*See Herr v. U.S. Forest Serv.*, 803 F.3d 809, 821 (6th Cir. 2015) ("[o]nce a right of action accrues, it becomes a 'piece' of intangible personal property . . ."). *See also In re Iroquois Energy Mgmt., LLC*, 284 B.R. 28, 32 (Bankr. W.D.N.Y. 2002) (noting that intangible personal property includes choses in action); *In re Fin. Ctr. Assocs. of E. Meadow, L.P.*, 140 B.R. 829, 832 (Bankr. E.D.N.Y. 1992) (same).

2

entitled to recover." *RK Co. v. See*, 622 F.3d 846, 850 (7th Cir. 2010). In this case, Edgebrook indisputably possessed the conversion claim when filing the complaint, and there is no dispute that the FDIC held the claim once it was appointed as receiver for Edgebrook. At the time of the Assignment between the FDIC and WM Capital Management in August 2015, the conversion claim did not vanish into thin air: either it remained with the FDIC or it transferred to WM Capital Management.

Chase argues that because a "whereas" clause of the Assignment states that the assets being conveyed to WM Capital Management consisted of "tangible personal property," the tort claim in this case was not transferred, because the tort claim is intangible property. In making this argument, Chase asks that we look only at this language in one "whereas" clause of the Assignment without regard to all other provisions in the agreement between the FDIC and WM Capital Management (Chase Opp'n at 2). We decline that invitation.

When interpreting a contract under New York law, which we do here in accordance with the choice of law provision in the Assignment, we must construe the contract as a whole "so as to give full meaning and effect to all of its provisions." *Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 133 (2d Cir. 2016). However, it is a "well-established guideline[ ] in the law of contract construction" that "[a]lthough a statement in a 'whereas' clause may be useful in interpreting an ambiguous operative clause in a contract, it cannot create any right beyond those arising from the operative terms of the document." *Aramony v. United Way of America*, 254 F.3d 403, 413 (2d Cir. 2001) (internal citations and quotations omitted). Such "recitals of the purposes and motives of the contracting parties, [ ] may shed light on, but are distinct from, the contract's operative promises to perform." *United States v. Hamdi*, 432 F.3d 115, 123 (2d Cir. 2005).

The "operative promises to perform" in the Assignment from the FDIC to WM Capital Management are not ambiguous. Under New York law, a contract is unambiguous "if the contract language has a definite and precise meaning . . . and concerning which there is no reasonable basis for a difference of opinion." *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 157 (2d Cir. 2016) (internal citations and quotations omitted). The operative provisions in the agreement make clear that the intent of the Assignment was to transfer the rights to this action to WM Capital Management. For example, the Assignment states that the FDIC was transferring all "right, title and interest" in the loan documents (Pl.'s Mot., Ex. 3: Assignment, ¶ 2); the Loan Sale Agreement (the terms of which are incorporated into the Assignment (*Id.*, ¶ 7))[3] defines "loans" to include "any other asset of whatever kind or type, all as identified on the attached" schedule of loans being sold, which included the Provest loans, and "all rights arising therefrom or appurtenant thereto" (Pl.'s Mot., Ex. 2: Loan Sale Agreement at 5); and the Loan Sale Agreement authorized WM Capital Management to continue "any type of pending litigation" concerning any loans sold pursuant to the agreement, which would include this lawsuit (*Id.*, § 5.7). Thus, we conclude that read as a whole, the Assignment unambiguously transferred the rights asserted in this action to WM Capital Management.[4]

Moreover, on January 25, 2017, the FDIC and WM Capital entered into an Amendment to the Assignment and related transaction documents, which left no doubt that the right to pursue this lawsuit is solely in the hands of WM Capital Management. The Amendment states, in

---

[3] The Assignment was attached as Attachment D to the Loan Sale Agreement (Pl.'s Mot., Ex. 2: Loan Sale Agreement).

[4] Although Chase did not make this point, we note that the phrase "tangible personal property" appears in one other portion of the transaction documents -- in the Bill of Sale -- when describing the loans listed in Exhibit A to the Bill of Sale (Pl.'s Mot., Ex. 10). However, the Loan Sale Agreement refers to this same list of loans, and as we explained above, unambiguously states that the transfer of these loans included pending litigation concerning the loans, such as this lawsuit (Loan Sale Agreement at 5 and § 5.7). Thus, in light of the above discussion, we conclude this phrase in the Bill of Sale does not introduce ambiguity into the agreement, which when read as a whole makes clear that this lawsuit was conveyed by the FDIC to WM Capital Management.

4

relevant part, that: (a) pursuant to the Assignment, "any and all of the FDIC's and/or Edgebrook's rights, title, and interests arising from or related to the Lawsuit [the instant case, No. 14 C 6443] and the Check [check number 4365155, at issue in this case] were sold, assigned, and transferred to WM Capital;" (b) "[t]he FDIC unconditionally and irrevocably waives and releases, and shall not subsequently make, file, or bring against any person or entity, any claims or causes of action which were made or could have been made in the Lawsuit based on the same set of operative facts;" and (c) "[t]o the extent there is any conflict between any provision in the Sale Documents, on the one hand, and any provision in this Amendment, on the other hand, the provisions of this Amendment shall control" (Pl.'s Mot., Ex. 6: Amendment to 08/27/2015 Assignment ("Amendment")).

The Loan Sale Agreement provides that provisions of the agreement may be amended or waived so long as it is "in writing executed by all of the parties" to the agreement (Pl.'s Mot., Ex. 2, at § 10.7). We find that the Amendment to the Assignment unambiguously transferred the rights in the current cause of action to WM Capital Management. *See, e.g., In re Residential Capital, LLC*, 531 B.R. 25, 46-47 (Bankr. S.D.N.Y. 2015) (holding where amendment provision in contract was clear, unambiguous, valid, and enforceable, the party's amendment to the agreement was proper); *see also Catlyn & Derzee, Inc. v. Amedore Land Developers, LLC*, 132 A.D.3d 1202, 1205-06 (N.Y. App. Div. 2015) (affirming lower court's dismissal of breach of contract claim based on original purchase price because amendment to the contract plainly and unambiguously modified the purchase price); *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, 157 F. Supp. 3d 352, 364 (S.D.N.Y. 2016) (holding that amendment to contract was unambiguous, valid and enforceable according to its terms).

Chase nonetheless argues that the Amendment to the Assignment is "too little, too late," and that it has been prejudiced and "inequitably deprived [] of a reasonable opportunity to assess the putative new assignment's effectiveness so close to trial, as fact discovery has long since closed" (Chase's Opp'n at 5-6). We disagree.

The question of whether this lawsuit transferred to WM Capital Management did not first arise when plaintiff filed the instant motion on January 25, 2017. On the contrary, on November 8, 2016 (two weeks after this case was reassigned to this Court on consent), Chase raised in open court a question about whether the FDIC assigned the right to pursue this lawsuit. Why Chase first raised this question in November 2016 is a mystery, because at the time plaintiff moved to substitute WM Capital Partners for the FDIC as the plaintiff in this case on September 14, 2015, plaintiff offered in support of that motion the very Assignment that Chase now says shows that the FDIC never transferred the right to pursue this action (doc. # 97: 09/14/15 Motion to Substitute Plaintiff, Ex. 3). However, Chase did not object to the substitution of WM Capital Partners in September 2015. It would not be unfair to hold that by its delay in raising the issue, Chase waived its objection that the FDIC did not transfer the right to this action by way of the Assignment. *See RK Co.*, 622 F.3d at 850 (holding that the "'real party in interest' is a defense subject to waiver").[5]

Moreover, when Chase raised the issue in November 2016, we ordered plaintiff to produce to Chase documents relevant to the assignment of the claims in this lawsuit and gave

---

[5] Chase also appears to argue that WM Capital Partners should have known much earlier that it was not the real party in interest because the Assignment was made to WM Capital Management, not WM Capital Partners, and that Chase has been prejudiced by that mistake that should have been corrected much earlier (Chase's Opp'n at 5). However, Chase had possession of transaction documents in September 2015 that likewise would have alerted Chase to this error – but did nothing about it. And, Chase has had an opportunity to pursue formal discovery into this issue – not to mention the informal discovery in connection with the discussions with the FDIC about the matter. In these circumstances, naming WM Capital Partners instead of WM Capital Management was "an understandable mistake . . . where the defendant was not prejudiced." *Rawoof v. Texor Petroleum Co.*, No. 02 C 5892, 2004 WL 3021391, at *3 (N.D. Ill. Dec. 29, 2004).

6

Chase leave to depose a witness on the question of whether the FDIC assigned this lawsuit (doc. # 174). Thus, Chase had the opportunity to obtain – and did obtain -- documentary discovery from plaintiff to show that the lawsuit was indeed transferred to WM Capital Management. Chase was also given an opportunity to depose a witness from WM Capital to testify about the assignment, but chose not to pursue that discovery. In light of the fact that Chase knew of the terms of the Assignment in September 2015, and was given ample opportunity in November 2016 to pursue discovery when it belatedly questioned the Assignment, there is no unfair prejudice to Chase from the timing of the motion.[6]

Finally, the claim of prejudice Chase now makes is not the one it orally made in open court in November 2016 when plaintiff first sought to substitute WM Capital Management. At that time, Chase expressed concern that if this action had not been assigned to WM Capital Management, it must still be held by the FDIC. As a result, Chase hypothesized that proceeding to trial with WM Capital Management as plaintiff would expose Chase to the risk of *seriatim* trials, which (1) would expose Chase to the risk of multiple liability if it lost the trial to WM Capital Management and then had to defend a subsequent suit by the FDIC, or (2) would deprive Chase of its victory if it prevailed at trial against WM Capital Management but then had to defend against the same claim brought by the FDIC. It is for that reason that the Court suggested that the parties verify that the FDIC would make no claim to possess this cause of action. The parties did so, and that resulted in the Amendment in which the FDIC both reaffirmed that the August 2015 Assignment included this lawsuit and provided assurance that the FDIC would

---

[6]The facts of this case stand in contrast to those in *Rawoof*, which Chase cites in support of its motion. In *Rawoof*, the court denied the motion to substitute the plaintiff because the plaintiff should have known the real party in interest since the commencement of litigation but had delayed filing the motion for nearly two years, and the defendant would be unduly prejudiced by substitution because the original plaintiff had died. *Rawoof*, 2004 WL 3021391, at *3.

never seek to pursue the claim at issue here against Chase. Thus, the prejudice that Chase originally said was at the heart of its opposition to substitution simply does not exist.[7]

### CONCLUSION

For the foregoing reasons, we grant plaintiff's motion to substitute WM Capital Management, Inc. for WM Capital Partners, Inc. as plaintiff in this action (doc. # 213).[8]

**ENTER:**

SIDNEY I. SCHENKIER
United States Magistrate Judge

**DATE: February 6, 2017**

---

[7]We note that in its proposed jury instructions, filed on February 3, 2017, Chase offers instructions and a verdict form that would submit to the jury the question of whether the FDIC assigned this lawsuit to WM Capital Management, Inc. (*see, e.g.*, doc. # 237: Proposed Jury Instructions and Verdict form at 111). However, in the briefing on this motion, Chase never suggested that if the Court disagreed with its position, we should submit the matter to the jury rather than decide the party in interest question as a matter of law. In any event, because we conclude that the Assignment (as well as the Amendment) unambiguously convey to WM Capital Management, Inc., the right to pursue this lawsuit, we decide the matter as a question of law, *see, e.g.*, *Ali v. Fed. Ins. Co.*, 719 F.3d 83, 89 n.9 (2d Cir. 2013) (New York law); there is no basis to submit the matter to the jury.

[8]The parties dispute whether Chase has standing "to challenge the assignment," with plaintiff arguing that Chase lacks the standing to do so (Pl.'s Mot. at 4-6) and Chase asserting that it does (Chase's Opp'n at 3-4). In light of our ruling, we need not address this debate.